UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00461-FDW-DSC

| | |
|---|---|
| INEZ ANNETTE ALBRIGHT, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>CHARLOTTE-MECKLENBURG BOARD )<br>OF EDUCATION, ERIC WARD, )<br>CHAUNEL JOHNSON, and AVERY )<br>MITCHELL, )<br>)<br>    Defendants. )<br>) | ORDER |

THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 16). For the reasons herein, the Court DENIES the Motion to Dismiss.

## I. PROCEDURAL BACKGROUND

Plaintiff Inez Annette Albright ("Plaintiff") commenced this action on June 19, 2017 in the Superior Court of Mecklenburg County, North Carolina. (Doc. No. 1-1). Defendants subsequently removed the action to this Court on August 4, 2017. (Doc. No. 1). After Defendants moved to dismiss the complaint in its entirety, Plaintiff moved to amend. (Doc. No. 4, 7). The Court granted Plaintiff's motion to amend and a subsequent motion to amend. (Docs. No. 9, 13). On October 18, 2017, Plaintiff filed its second amended complaint, asserting a claim under 42 U.S.C. § 1983 for violating her rights to equal protection under the Fourteenth Amendment of the Constitution and a claim for tortious interference with contract. (Doc. No. 14). Defendants moved to dismiss Plaintiff's second amended complaint on November 1, 2017. (Doc. No. 16). Defendants contend that the individual defendants, Eric Ward, Chaunel Johnson, and Avery Mitchell, (the "Individual

Defendants") are entitled to qualified immunity on both claims, and that Plaintiff has failed to allege sufficient facts to support its claims against the Charlotte-Mecklenburg Board of Education (the "Board"). (Doc. No. 16-1 at 1).

## II. FACTUAL BACKROUND

In December of 2014, Plaintiff accepted a position with Charlotte-Mecklenburg Schools ("CMS") as a Behavior Modification Technician ("BMT") at Harding High School.[1] (Doc. No. 14 at 3). BMTs assist the school staff with discipline issues. (Doc. No. 14 at 3). Harding High School was known for having significant student discipline problems. (Doc. No. 14 at 4). Plaintiff was the only female BMT at Harding High School, and she openly criticized her fellow male security officers' response to fights that occurred on the campus during the 2014-2015 school year. (Doc. No. 14 at 4). At the end of the school year, the principal of Harding High School informed Plaintiff that he would not renew her contract for the 2015-2016 school year. (Doc. No. 14 at 4).

However, the principal was replaced by Defendant Ward, and Ward hired Plaintiff as a BMT for the 2015-2016 school year. (Doc. No. 14 at 4). In the 2015-2016 school year, Plaintiff continued to voice concerns about security on campus. (Doc. No. 14 at 5). In or around March 2016, Ward discussed a reduction of the number of BMT positions at Harding High School for the next school year, including Plaintiff's position. (Doc. No. 14 at 6). Then, on June 1, 2016, Plaintiff responded to a call that a large number of students had congregated outside the cafeteria and had not gone to class. (Doc. No. 14 at 7). The other BMTs then funneled the students into the G building—the building Plaintiff with a co-worker was assigned to oversee. (Doc. No. 14 at 7).

---

[1] The background is based on allegations in Plaintiff's second amended complaint (Doc. No. 14). All factual allegations are taken in the light most favorable to Plaintiff given that Defendants have moved to dismiss Plaintiff's claims for failing to state a claim. See generally Mylan Labs. Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

Plaintiff asked her co-worker to come to her aid, but he chose not to respond. (Doc. No. 14 at 7). While urging the students to return to their classrooms, one student began physically attacking Plaintiff. (Doc. No. 14 at 7-8). Three other students joined in, and they continued to attack her until the school resource officer arrived and intervened. (Doc. No. 14 at 8). News of the attack spread and created negative publicity for CMS. (Doc. No. 14 at 9). The Mecklenburg County District Attorney's office cleared Plaintiff of any wrongdoing, and eventually, the students involved were charged, and the main perpetrator convicted of assault. (Doc. No. 14 at 8-9).

On June 16, 2016, Defendant Johnson, who worked in employee relations for CMS, terminated Plaintiff and informed Plaintiff that she would not be employed as a BMT in the next school year and stated that CMS was blaming her for the incident. (Doc. No. 14 at 10). Johnson acted on the recommendation of Ward and Mitchell, the head of human resources. (Doc. No. 14 at 10). At that time, Plaintiff believed her position had previously been eliminated, as informed by Ward. (Doc. No. 14 at 10). Plaintiff, then, reverted back to her classification as a member of the permanent substitute teacher pool. (Doc. No. 14 at 10-11).

However, when Plaintiff told Johnson of her classification, Johnson informed her that she was barred from all future employment with CMS because of the June 1, 2016 incident. (Doc. No. 14 at 11). Subsequently, Plaintiff's classification as a member of the permanent substitute teacher pool was removed. (Doc. No. 14 at 11). Plaintiff asked for a hearing before the Board, but counsel for the Board informed Plaintiff that she had no hearing rights because she was not terminated. (Doc. No. 14 at 11). Then, Plaintiff asked the Board for an investigation of the incident and her termination but received no response. (Doc. No. 14 at 11). Despite repeated request for a writing, Johnson and Mitchell stalled. (Doc. No. 14 at 11-12). Eventually, in April 2017, Mitchell

responded in writing that "Defendant Johnson had decided that Plaintiff had violated CMS policy and was responsible for the assault, but that Plaintiff had not been disciplined in any manner and had not been terminated. Rather, her BMT contract had ended and was not renewed." (Doc. No. 14 at 12). Plaintiff requested a hearing with the Board, explaining that by firing her and barring her from employment as a result of the incident on June 1, 2016, a gender double-standard had been applied. (Doc. No. 14 at 12). Male BMTs had fought or beaten students and were cleared for their acts; however, she had been attacked and beaten and fired for violating CMS policy. (Doc. No. 14 at 12). The Board denied Plaintiff's request for a hearing. (Doc. No. 14 at 13). Counsel for the Board informed Plaintiff that she had not been fired and being barred from future employment was not appealable. (Doc. No. 14 at 13).

### III. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint"—"not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). The court accepts all well-pleaded allegations in the complaint as true and draws all reasonable factual inferences from those facts in the plaintiff's favor. Id. at 244 (citations omitted); Mylan Labs., 7 F.3d at 1134. Well-pleaded allegations "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be plausible, the factual matter must "allow[] the court to draw the reasonable inference that the defendant is liable." Id. (citing Bell Atl. Corp., 550 U.S. at 556). A court need not "accept as

4

true allegations that contradict matters properly subject to judicial notice or by exhibit." Veney v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

## IV. ANALYSIS

### A. Section 1983

#### 1. Individual Defendants

The Individual Defendants contend that they are entitled to qualified immunity on Plaintiff's claims under 42 U.S.C. § 1983. Qualified immunity is a doctrine that protects government officials from civil liability, as long as "their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." Meyers v. Balt. Cty., 713 F.3d 723, 731 (4th Cir. 2013) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It "strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions" by precluding an award of "money damages as a result of 'bad guesses in gray areas.'" Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011) (citations omitted). To determine whether qualified immunity applies, the Court determines whether the facts, taken in the light most favorable to the non-movant, establish that the officer violated a constitutional right, and if necessary, determines if the right was clearly established to a reasonable person. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may also "determine whether the constitutional rights allegedly violated . . . were clearly established without first determining whether those rights exist at all." See e.g., Braun, 652 F.3d at 560 (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)). A right is clearly established if "in the light of pre-existing law, the unlawfulness of the actions is apparent"; the law does "not require of such officials the legal knowledge culled by the collective hindsight of skilled lawyers and

5

learned judges, but instead only the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." Johnson v. Caudill, 475 F.3d 645, 650 (4th Cir. 2007) (internal quotation marks and citations omitted).

Qualified immunity from section 1983 claims is an "immunity from suit"—"an entitlement not to stand trial or face the other burdens of litigation[.]" Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted). Therefore, qualified immunity from section 1983 claims should be addressed "at the earliest possible stage in litigation." Pearson, 555 U.S. at 232 (citation omitted). However, determining qualified immunity at the pleading stage can be difficult. See generally id., at 238-39 (noting that the "the precise factual basis for the plaintiff's claim or claims may be hard to identify" at the pleading stage). For example, the plaintiff may have alleged a plausible violation of a clearly established right, but a material factual dispute over what actually occurred exists. DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995). If these circumstances exist, dismissal at the pleading stage is not appropriate. See Edwards, 178 F.3d at 243. Discovery will proceed, but issues relating to qualified immunity should be prioritized. See generally Crawford-El v. Britton, 523 U.S. 574, 600 (1998).

To assert a claim under section 1983 for a violation of the equal protection clause, Plaintiff is "required to plead sufficient facts to 'demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Adams v. Trs. of Univ. of N.C. Wilmington, 640 F.3d 550, 566 (4th Cir. 2011) (quoting Williams v. Hansen, 326 F.3d 569, 576 (4th Cir. 2003)). "The equal protection clause confers a right to be free from gender discrimination that is not substantially related to important governmental objectives." Beardsley v. Webb, 30 F.3d 524, 529

(4th Cir. 1994) (citing Davis v. Passman, 442 U.S. 228, 234-35 (1979)).  Courts will also apply the McDonnell Douglas framework, which was developed for Title VII claims, to claims pursuant to 42 U.S.C. § 1983 that are similar to Title VII claims.  See Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004).  Under this framework, a plaintiff establishes a prima facie case by showing "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010) (citations omitted).

The Individual Defendants contend that they are entitled to qualified immunity because their acts were reasonable and there are no allegations that they knowingly violated the law.  (Doc. No. 16-1 at 9-12).  However, qualified immunity does not turn on the reasonableness or knowledge of the public official but instead turns on whether "a reasonable person in the official's position would have known that his conduct would violate that right."  Winfield v. Bass, 106 F.3d 525, 530 (4th Cir. 1997) (citation omitted).  In the case at bar, Plaintiff has plead that "gender-double standard firing" by the Individual Defendants occurred. (Doc. No. 14 at 12).  Specifically, Plaintiff has alleged that Johnson, upon the recommendation and review of Ward and Mitchell, terminated her employment, declined to renew her contract for the following school year, removed her from the substitute pool, and barred her from future employment with CMS for violating CMS policy. (Doc. No. 14 at 10-11).  As alleged, Plaintiff, the only female BMT at Harding High School, was fired for violating CMS policy for her handling of the incident on June 1, 2016, but male BMTs were not fired when they fought or beat students. (Doc. No. 14 at 12).  Although not plead with clarity, these allegations, when viewed in the light most favorable to Plaintiff, plead disparate treatment or different treatment of Plaintiff by the Individual Defendants when compared to

7

treatment by the Individual Defendants of BMTs of the opposite sex: Plaintiff was fired for using force, but her male colleagues were not fired when they used force. See generally Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." (citing Moore v. Charlotte, 754 F.2d 1100, 1106-10 (4th Cir. 1985)); (see Doc. No. 19 at 17). By pleading sex discrimination by the Individual Defendants, Plaintiff has plead a violation of the equal protection clause. See Beardsley, 30 F.3d at 529. Defendants may dispute the facts alleged by Plaintiff, and ultimately, show that a reasonable official would have believed that his conduct was lawful, but the Court cannot conclude this on the pleadings. Thus, at this preliminary stage, the Court cannot conclude as a matter of law that the Individual Defendants are entitled to qualified immunity.

**2. The Board**

> To hold a municipality (a local government entity) liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom of the municipality caused the violation. Hall, 31 F.3d at 195. "Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986). To hold a municipality liable for a single decision (or violation), the decisionmaker must possess "final authority to establish municipal policy with respect to the action ordered." Id. at 481. . . . Thus, the Board cannot be held liable for personnel decisions over which it did not retain final review authority; that is, it is not liable for decisions committed to [an employee's] discretion because there is no respondeat superior liability under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). Rather, the Board is only liable for acts that it has "officially sanctioned or ordered." Pembaur, 475 U.S. at 480.

Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). In this case, Plaintiff sued the Board "under § 1983 for ratifying the acts of its agents[.]" (Doc. No. 14 at 2; see also Doc. No. 14 at 13-14). Defendants, however, contend that Plaintiff has not plead facts sufficient to support liability

under a theory of ratification, or officially sanctioned act, because Plaintiff's appeal to the Board was untimely. (Doc. No. 16-1 at 5-6). In other words, the Board did not have "final review authority" over the Individual Defendants' acts because Plaintiff failed to timely appeal to the Board. Yet, as pointed out by Plaintiff, Defendants argument relies on matters outside the scope of the pleadings—CMS's Appeal Policy.[2] (Doc. No. 19 at 11). Plaintiff also argues that "the application of the policy raises factual issues that are not proper to resolve at the motion to dismiss stage." (Doc. No. 19 at 11). The Court agrees with Plaintiff; Defendants have not shown that the *complaint* fails to state a cause of action. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's claims under section 1983 without prejudice to Defendants to reassert those arguments, if applicable, at a later stage in the proceedings.

**B. Tortious Interference with Contract**

The Individual Defendants contend they are entitled to qualified immunity as non-outsiders for Plaintiff's claim of tortious interference with contract. (Doc. No. 16-1 at 12).[3] "The elements of a claim for tortious interference with contract are: '(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.'" Beverage Sys. of Carolinas, LLC v. Associated Beverage Repair, LLC, 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016) (quoting United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)). However, under North Carolina law, there is a distinction

---

[2] Defendants have not asked for or argued that judicial notice is appropriate.
[3] Defendants also moved to dismiss the claim against the Board because the Board is a party to the contract. (Doc. No. 16-1 at 12). However, as pointed out by Plaintiff, the tortious interference with contract claim is only plead against the Individual Defendants. (Doc. No. 19 at 18 n.2 (citing Doc. No. 14 at 15)). Therefore, this matter is moot.

9

between claims of tortious interference with contract against outsiders and non-outsiders. Combs v. City Elec. Supply Co., 203 N.C. App. 75, 84, 690 S.E.2d 719, 725 (2010). A non-outsider, "who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter[,]" Smith v. Ford Motor Co., 289 N.C. 71, 87, 221 S.E.2d 282, 292 (1976), enjoys immunity from liability "for inducing [his] corporation or other entity to breach its contract with an employee" unless "exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with[,]" Lenzer v. Flaherty, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992) (citations omitted). Thus, "a non-outsider has a *qualified* right to bring about the termination of another's terminable contract of employment when, in good faith, he believes this to be necessary to protect his own legitimate business interest or to perform his own fiduciary duty to the employer[.]" Smith, 289 N.C. at 88, 221 S.E.2d at 292-93 (emphasis in original); see also Wilson v. McClenny, 262 N.C. 121, 133, 136 S.E.2d 569, 578 (1964) ("The acts of a corporate officer in inducing his company to sever contractual relations with a third party are presumed to have been done in the interest of the corporation."). However, the conduct is not privileged or justified if the "officer's motives are improper[,]" Embree Constr. Group, Inc. v. Rafcor, Inc., 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (citations omitted), as when "his acts are performed in his own interest and adverse to that of his firm[,]" Wilson, 262 N.C. at 134, 136 S.E.2d at 578. Therefore, "[i]n order to hold a 'non-outsider' liable for tortious interference with contract, a plaintiff must establish that the defendant acted with legal malice[.]" Bloch v. Paul Revere Life Ins. Co., 143 N.C. App. 228, 240, 547 S.E.2d 51, 60 (2001) (citations and quotations omitted). "[A]ctual malice in the sense of personal hatred, ill will, or spite" is not required to be plead or proven, Ga. Pac. Consumer Prods., LP v. Von Drehle Corp., 618 F.3d 441,

456 (4th Cir. 2010) (quoting Childress v. Abeles, 240 N.C. 667, 675, 84 S.E.2d 176, 182 (1952)); instead, legal malice occurs when the non-outsider "does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties[,]" Bloch, 143 N.C. App. at 240, 547 S.E.2d at 60 (citations and quotations omitted); see also Childress, 240 N.C. at 675, 94 S.E.2d at 182 (defining legal malice as the "intentional doing of the harmful act without legal justification"). Thus, conduct that is "in violation of statutory provisions or contrary to established public policy may . . . make an interference improper." Ga. Pac. Consumer Prods., 618 F.3d at 457 (quoting the Restatement (Second) of Torts § 767 cmt. c.).

Because whether the act was justified or in good faith "depends upon 'the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor[,] and the contractual interests of the other party," Embree Constr. Group, 330 N.C. at 498, 411 S.E.2d at 924 (quoting Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988)), the question is often one of fact that cannot be resolved on a motion to dismiss, id. at 499, 411 S.E.2d at 925 (citing L & H Inv., Ltd. v. Belvey Corp., 444 F. Supp. 1321, 1325 (W.D.N.C. 1978)). Therefore, allegations of "facts demonstrating that defendants' actions were not prompted by 'legitimate business purposes'" are sufficient at the pleading stage. See id. at 500-01, 411 S.E.2d at 926 (finding pleading that action was done "in their own interest to avoid liability to UCB for their [personal] guarantees" sufficient to withstand a motion to dismiss); Gilreath v. Cumberland Cnty. Bd. of Educ., No. COA17-927, 2017 WL 1381652, at *25 (N.C. App. Apr. 18, 2017) (unpublished) ("This Court has held that a plaintiff successfully asserts a claim for tortious interference against

a non-outsider where he alleges that the defendant acted with malice and without a legitimate purpose.").

Here, Plaintiff has alleged the Individual Defendants interfered with her employment contract with CMS on account of her sex and in order to blame her for the incident on June 1, 2016 to avoid scrutiny and bad publicity for the school and CMS. (Doc. No. 14 at 15-16). Plaintiff alleges that Johnson terminated Plaintiff's employment upon recommendation of Ward and the approval of Mitchell. (Doc. No. 14 at 10). Plaintiff alleged that the June 1, 2016 incident was picked up by the news, a video of the incident went viral on social media, and that Plaintiff suffered a concussion and other injuries requiring medical attention. (Doc. No. 14 at 8-9). Further, Plaintiff was not charged for her role in the incident on June 1, 2016, whereas the students involved were charged, with the main perpetrator being convicted of assault. (Doc. No. 14 at 9-10). Also, as previously discussed, Plaintiff alleges that male BMTs were not terminated when they had "beaten and controlled the students." (Doc. No. 14 at 12). Plaintiff also alleges Ward acted "to avoid scrutiny of his leadership of the school[.]" (Doc. No. 14 at 15). Viewing these facts as a whole and in the light most favorable to Plaintiff, Plaintiff has alleged facts supporting that the Individual Defendants' acted with legal malice. See generally Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 463, 524 S.E.2d 821, 827 (2000) ("[P]laintiff's forecast of evidence sufficiently raises the issue as to whether the motives of defendants Schneider and Wagar were reasonable, good faith attempts to protect their interests or the corporation's interests."); Lenzer v. Flaherty, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992) (reversing order granting summary judgment to defendants where "[p]laintiff's forecast of evidence raises precisely the issue of wrongful purpose, which purpose would defeat a non-outsider's qualified privilege to interfere"). The Individual

Defendants raise arguments that their actions were reasonable and justified,[4] but these arguments involve factual disputes that are not properly considered by the Court on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As a result, the Court denies the Defendants motion to dismiss the claim of tortious interference with contract against the Individual Defendants.

## V. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. No. 16) is DENIED without prejudice to Defendants to reassert their arguments at a later stage in the proceeding.

IT IS FURTHER ORDERED that the parties should prioritize discovery on the issue of qualified immunity to the extent possible and efficient.

IT IS SO ORDERED.

Signed: December 5, 2017

Frank D. Whitney
Chief United States District Judge

---

[4] For example, Defendants contend Mitchell's and Johnson's acts were justified "given the existence of a videotape that revealed Plaintiff's role in the incident" and "the conclusions reached at the close of the investigation" (Doc. No. 16-1 at 11-12). Yet, this videotape and investigation is not before the Court at this stage, and the Court is bound to consider all allegations in the complaint in the light most favorable to Plaintiff.